1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JASON M. DELESSERT, on his own behalf, and on behalf of all similarly situated individuals, | NO.   2:24-cv-2087 |
| Plaintiff, | COMPLAINT (CLASS ACTION) |
| v. | |
| KAISER FOUNDATION HEALTH PLAN, INC., | |
| Defendant. | |

## I.  INTRODUCTION

1.      Plaintiff Jason Delessert ("Delessert") is an enrollee in a Kaiser Foundation Health Plan of Washington Inc. health plan. He has disabling hearing loss and requires prescription hearing aids[1] and related services as recommended by his licensed hearing

---

[1] In this Complaint, the terms "prescription" and "prescribe" are used to refer to prescriptions and/or recommendations from licensed hearing care professionals necessary to obtain a non-over-the-counter hearing aid and related treatment. *See* 21 C.F.R. § 800.30(b) (defining a "prescription hearing aid" as a hearing aid that is not an over-the-counter hearing aid). Before October 17, 2022, hearing aids were only available by prescription or written recommendation by a licensed hearing care professional. Since that date, over-the-counter hearing aids ("OTC hearing aids") are available for use by adults with mild to moderate hearing loss without a prescription. In this Complaint, "hearing aids" or "prescription hearing aids" refer to hearing aids that are only available with a written recommendation or prescription from a licensed hearing care professional. Hearing aids that can be purchased without a prescription are referred to as "OTC hearing aids."

COMPLAINT (CLASS ACTION) – 1

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

care provider. Delessert, however, cannot obtain coverage for this needed medical device because his Kaiser health plan excludes all coverage for hearing aids.

2.    This is illegal discrimination and Kaiser knows it. Another similar case was brought by a different Washington Kaiser enrollee in *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 948 (9th Cir. 2020).

3.    In a landmark decision against Kaiser, the Ninth Circuit held that the Affordable Care Act ("ACA") prescribed a paradigm shift in the health insurance industry. So-called "fair discrimination" against people with disabilities, including people with disabling hearing loss, was outlawed:

> Prior to the ACA's enactment, an insurer could generally design plans to offer or exclude benefits as it saw fit without violating federal antidiscrimination law—in particular, the Rehabilitation Act—so long as the insurer did not discriminate against disabled people in providing treatment for whatever conditions it chose to cover. The primary issue before us is ***whether the ACA's nondiscrimination mandate imposes any constraints on a health insurer's selection of plan benefits. We hold that it does.***

*Id.* (emphasis added). Before the ACA, insurers could design benefits to avoid coverage of people with disabilities and chronic health conditions. *See, e.g.*, RCW 48.30.300(2). Now, however, health insurers and others subject to the ACA have "an affirmative obligation not to discriminate in the provision of health care—in particular, to consider the needs of disabled people and not design plan benefits in ways that discriminate against them." *Id.* at 955. This includes discrimination based on hearing disability.

4.    The *Schmitt* case was remanded and, in 2024, the case settled, providing coverage of hearing aids and related services for a class of certain Washington Kaiser-insured enrollees. *See Schmitt v. Kaiser Found. Health Plan of Wash.*, No. 2:17-cv-1611-RSL, 2024 U.S. Dist. LEXIS 71166 (W.D. Wash. Apr. 18, 2024). The *Schmitt* Settlement Class did not include enrollees in individual market health plans, such as those health plans

COMPLAINT (CLASS ACTION) – 2

sold through the Washington health benefit exchange, including the one in which Delessert is enrolled. Delessert is not a *Schmitt* settlement class member and Kaiser did not change its discriminatory practices for many of its enrollees who were not part of the *Schmitt* settlement class, including Plaintiff Delessert.

5.    Delessert is enrolled with Kaiser through the Washington Health Plan Finder (the ACA exchange in Washington State). He understood from speaking with a Kaiser customer service representative in the fall of 2023 that his hearing aids would be covered by Kaiser beginning in 2024. But Kaiser continued to exclude hearing aids in Delessert's 2024 health plan as it does in many other health plans across the country.

6.    This type of discrimination is not new; rather, it follows from a long history of prejudice, exclusion, and stigmatization of people with disabilities in general. The Affordable Care Act's Section 1557, 42 U.S.C. § 18116, protects individuals with disabilities—including those diagnosed with hearing disabilities—from such discrimination in the design and administration of their health coverage. This case seeks to enforce those protections.

7.    Defendant Kaiser Foundation Health Plan Inc. ("Kaiser") discriminates on the basis of disability when it (or a subsidiary or affiliate) designs, insures, and administers health plans that exclude all coverage for hearing aids, a treatment required only by hearing disabled enrollees.

8.    Specifically, prescription hearing aids are the essential piece of durable medical equipment that ensures that hearing disabled individuals are not isolated and segregated from the mainstream of American society. Hearing aids can profoundly improve the life, health and social engagement of hearing disabled insureds. In this sense, hearing aids are like wheelchairs for mobility disabled persons or insulin and supplies for diabetic individuals—they are the medical devices that offer Plaintiff and the vast majority of hearing disabled insureds access to many daily activities and indeed,

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

the world at large. For Plaintiff and the proposed class, prescription hearing aids are the key to equal treatment and meaningful access to society.

9.      Yet, Defendant Kaiser Foundation Health Plan Inc. ("Kaiser") excludes coverage for prescription hearing aids in many of its health plans designed and administered by it or by its affiliates and subsidiaries ("Hearing Aid Exclusion" or "Exclusion").

10.     Plaintiff Jason Delessert is an adult diagnosed with disabling hearing loss who resides in King County, Washington. Delessert is enrolled in Kaiser health plan issued by a Kaiser subsidiary/affiliate, Kaiser Foundation Health Plan of Washington, Inc. Delessert is diagnosed with disabling hearing loss and requires prescription hearing aids.

11.     Defendant Kaiser Foundation Health Plan Inc. is a California nonprofit corporation that is the parent or holding company for various Kaiser health plans across the country, including Kaiser Foundation Health Plan of Washington, Inc., the health plan that issued and delivered Delessert's coverage. Kaiser is the parent/holding company of health insurers and administrators that engage in health programs or activities and receive federal financial assistance. Accordingly, Kaiser and all of its subsidiaries and affiliates are, collectively, a "covered entity" subject to the Affordable Care Act's anti-discrimination law, 42 U.S.C. § 18116, known as Section 1557.

12.     Kaiser offers fully-insured plans, where individuals and/or employers pay a fixed premium to Kaiser to cover health care claims. It also acts as a claims administrator where, for a fee, it processes and pays claims, but where the employer ultimately reimburses Kaiser for the cost of any approved claims (this is referred to herein as acting as a "third party administrator" or "TPA").

13.     Based on information and belief, Kaiser designs and administers health plans, whether insured or self-funded that exclude all coverage for prescription hearing

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

aids.  Based on information and belief, Kaiser offers employers that hire Kaiser as a TPA the option to exclude hearing aids from the self-funded health plans that they administer. In sum, Kaiser engages in discrimination against people who require hearing aids to treat their disability in both its fully-insured health plans, and the health plans that Kaiser administers.

14.    Kaiser has historically excluded all coverage for treatment related to hearing loss. Over time, Kaiser has added coverage of cochlear implants ("CIs") and osseointegrated devices (commonly known as bone-anchored hearing aids or "BAHAs," but which are not considered prescription hearing aids), but in many of its health plans, Kaiser continues to exclude all coverage for hearing aids and the specialized health services related to the provision of hearing aids (referred to herein as "hearing aid related services" or "related services").

15.    Delessert's Kaiser health plan excludes all coverage for hearing aids and hearing-aid related services.  Based on information and belief, Delessert's Kaiser plan includes the following or similar exclusion:[2]

| Hearing Examinations and Hearing Aids | Preferred Provider Network | Out of Network |
|---|---|---|
| Hearing exams for hearing loss and evaluation and diagnostic testing for cochlear implants.<br><br>Cochlear implants or Bone Anchor Hearing Aids (BAHA) when in accordance with | **Hospital – Inpatient:**<br><br>After Deductible, Member pays 10% of Plan Coinsurance<br><br>**Hospital – Outpatient:**<br><br>After Deductible, Member pays 10% of Plan Coinsurance | **Hospital – Inpatient:**<br><br>After Deductible, Member pays 50% Plan Coinsurance<br><br>**Hospital – Outpatient:**<br><br>After Deductible, Member pays 50% of Plan Coinsurance |

---

[2] Delessert requested the certificate of coverage from Kaiser, but Kaiser would only provide the document by mail, rather than make a digital version available.  To date, he has not received a copy of the health plan.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

| | | |
|---|---|---|
| KFHPWA clinical criteria.<br><br>Covered services for cochlear implants and BAHA include implant surgery, pre-implant testing, post implant follow-up, speech therapy, programming and associated supplies (such as transmitter cable and batteries). | **Outpatient Services:**<br><br>Office visits:  Member pays $20 Copayment for primary care provider office visits or $35 Copayment for specialty care provider office visits<br><br>All other services including surgical services:  After Deductible, Member pays 10% Plan Coinsurance<br><br>Enhanced Benefit:<br><br>Office visits:  Member pays $10 Copayment for primary care Provide office visits or $25 Copayment for specialty care provider office visits<br><br>Deductible and coinsurance do not apply to primary and specialty care office visits<br><br>All other services, including surgical services, After Deductible, Member pays 10% Plan Coinsurance | |
| **Hearing aids including hearing aid examinations** | **Not covered; Member pays 100% of all charges** | **Not covered; Member pays 100% of all charges** |
| **Exclusions**:  Hearing care, routine hearing examinations, programs or treatments for hearing loss including but not limited to, externally worn hearing aids or surgically implanted hearing aids, and the surgery and services necessary to implant them except as described above, and hearing screening tests required under Preventive Services. | | |

16.    But for Kaiser's Exclusion, the prescribed services would have been covered as they are considered medically necessary by Kaiser and are a form of durable medical equipment or prosthetic. As a result of Kaiser's discrimination, Delessert and

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

proposed class members do not have access to the essential medical equipment required to treat their disability. At the same time, other enrollees have access to the medical equipment needed to treat their diagnosed health conditions.

17.    Based on information and belief and evidence gathered in the *Schmitt* litigation, class members' medical diagnosis of hearing loss together and the code for hearing aids trigger the denial of coverage for the durable medical equipment that they need.

18.    Based on information and belief, in some health plans, Kaiser imposes the Hearing Aid Exclusion only after an enrollee reaches a particular age, such as 18 or 21. The trigger for the denial of coverage is their medical diagnosis, the code for hearing aids, together with their date of birth.  Hearing disabled enrollees in these plans who cannot obtain hearing aid coverage are still discriminated against on the basis of disability, although they may also have a claim for discrimination based on their age.

19.    Kaiser's categorical exclusion of coverage for hearing aids is grounded in the historic isolation and segregation of people with disabilities, including those with hearing disabilities, from the mainstream of American society. *See* 42 U.S.C. § 12101(a)(2)–(3). The Exclusion at issue here is one of many historical yet ongoing discriminatory barriers that individuals with disabilities continually encounter and that anti-discrimination law was designed to combat. *See* 42 U.S.C. § 12101(a)(5).

20.    Categorical exclusions of a particular device or treatment were routinely applied when the device or treatment at issue was overwhelmingly required by disabled individuals and not the general population. *See* Blake, Valarie, *Restoring Civil Rights to the Disabled in Health Insurance,* 95 Neb. L. Rev. 1071, 1086 (2017) (hereinafter "Blake"). Indeed, before the Affordable Care Act, many health plans purposefully and legally excluded coverage of various durable medical devices in order to avoid covering people with disabilities. *Id.*

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

21.     Historically Kaiser offered no coverage related to hearing loss and excluded other forms of durable medical equipment needed by disabled insureds, even including wheelchairs.

22.     The Hearing Aid Exclusion is a remnant of the historic exclusionary treatment of people with disabilities by Kaiser. It persists in Kaiser's benefit design without medical or scientific justification.

23.     The historic exclusion of coverage for hearing aids was not reexamined by Kaiser when the ACA's anti-discrimination laws took effect. Such discrimination is no longer legal under the ACA. Kaiser's failure to evaluate whether its Exclusion was a form of disability discrimination is "thoughtless indifference" or "benign neglect" of the coverage needs of insureds with disabilities, and a form of discriminatory prejudice. *See Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021).

24.     Hearing aids are only used by people with hearing loss or impairment. Hearing aids do not treat or ameliorate any other condition.

25.     And, Kaiser's Hearing Aid Exclusion impacts only or nearly only hearing disabled insureds. Kaiser's Hearing Aid Exclusion directly targets hearing disabled people by eliminating the key medical device they need to treat and ameliorate their disability, resulting in illegal discrimination.

## II.   JURISDICTION AND VENUE

26.     This action arises in part under Section 1557 of the Patient Protection and Affordable Care Act ("Affordable Care Act" or "ACA"), 42 U.S.C. § 18116.

27.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States.

28.     Declaratory relief is authorized by Rules 57 and 65 of the Federal Rules of Civil Procedure and by 28 U.S.C. §§ 2201 and 2202.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

29.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), because, *inter alia*, a defendant resides or may be found in this district and a substantial part of the events giving rise to the claims occurred in Burien, King County, Washington.

30.     The Court has personal jurisdiction over Kaiser because Kaiser and/or its subsidiaries do business in the Western District of Washington, including providing health insurance to thousands of Washington residents.

### III.  PARTIES

31.     ***Jason M. Delessert.*** Plaintiff Delessert is an adult diagnosed with disabling bilateral hearing loss who resides in King County, Washington. Delessert is enrolled in a Kaiser-insured health plan issued by Kaiser subsidiary/affiliate, Kaiser Foundation Health Plan of Washington, Inc. Delessert is diagnosed with disabling hearing loss and requires prescription hearing aids.

32.     ***Kaiser Foundation Health Plan, Inc.*** Defendant Kaiser Foundation Health Plan Inc. is a California nonprofit corporation that is the parent/holding company of various Kaiser health plans across the country, including Kaiser Foundation Health Plan of Washington, Inc., the health plan that issued and delivered Delessert's coverage. Kaiser is the parent/holding company of certain health insurers that engage in health programs or activities and receive federal financial assistance, such that Kaiser and all of its subsidiaries and affiliates are together a "covered entity" subject to the Affordable Care Act's anti-discrimination law, 42 U.S.C. § 18116, known as Section 1557.

### IV.  FACTUAL BACKGROUND

**A.     Hearing Loss Is Treated with Medically Necessary Hearing Aids and Cochlear Implants.**

**1.     Hearing Loss.**

33.     Hearing involves a complex process by which sound waves are converted to vibrations that are transmitted through the eardrum to the middle-ear bones, then to

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

the fluid-filled cochlea in the inner ear. The cochlea contains tiny hair cells that respond to specific frequencies and emit microscopic electrical impulses to the auditory nerve, from which the brain decodes the sound. Hearing loss is the result of damage to one or more of those components.

34.    A common preliminary screening for hearing loss is a pure-tone test, in which subjects are presented with tones at different frequencies (pitches), measured in Hertzes (Hz), at increasing volume, measured in decibels (dB). The subjects are asked to indicate when they hear those tones. The threshold loudness at which a tone becomes audible is recorded on an audiogram.

35.    The critical metric from an audiogram is the average decibel threshold in the frequencies involving speech, which are the frequencies of 500, 1,000, 2,000 and 4,000 cycles per second, measured in Hertzes (Hz).

36.    The generally accepted standard for normal hearing is a threshold of 25 dB.[3] If the tones must be louder than 25dB to be audible, the subject has worse-than-normal hearing. An average decibel threshold greater than 25 dB in the speech frequencies is generally considered, from a population wide basis, the point at which "hearing loss begins to impair communication in daily life." Lin, *et al.*, *Hearing Loss Prevalence in the United States,* Archives of Internal Medicine, Vol. 14, No. 20 at pp. 1831–32 (Nov. 14, 2011).

37.    The most common form of hearing loss is sensorineural hearing loss ("SNHL"), in which the inner-ear and/or the nerves that carry sound information from the inner ear to the brain are damaged. That damage is generally not correctible through

---

[3] While the results of audiometric testing, standing alone, are not sufficient to define whether an individual is "disabled" under federal law or from a medical perspective, certain audiometric thresholds are used on an epidemiological basis to classify entire populations for public policy and scientific purposes.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

surgery or medication, and can be mitigated only through hearing aids or, in extreme cases, cochlear implants.

38.     Conductive hearing loss occurs when damage to the outer or middle ear prevents sound from reaching the inner ear. Conductive hearing loss can be addressed with a bone-anchored hearing aid, which bypasses the damaged middle-ear structures and transmits sound directly to the cochlea and the hair cells. A bone-anchored hearing aid is a different device than a "cochlear implant" and, as the name makes clear, is considered to be a type of hearing aid.

39.     Plaintiff Delessert is diagnosed with bilateral sensorineural hearing loss.

**2.     Prescription Hearing Aids.**

40.     Until October 2022, the fitting and dispensing of hearing aids were limited by law to licensed hearing care professionals. Even today, prescription hearing aids may only be obtained upon the written recommendation or prescription by a licensed hearing care professional.

41.     Hearing aids are generally prescribed when a patient's hearing loss is confirmed by objective studies showing hearing loss together with subjective reports to a licensed hearing care professional of a significant impact from the hearing loss on their daily functioning. Licensed hearing care professionals do not typically prescribe hearing aids when these two requirements are not met.

42.     As a result, all or very nearly all individuals who require prescription hearing aids are "disabled" under federal law, since they have an objectively diagnosed hearing loss that causes a substantial impact on their daily functioning leading to the prescription of hearing aids by a licensed hearing care professional. That is the case with Plaintiff Delessert.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

**3.    Cochlear Implants, Osseointegrated Devices and OTC Hearing Aids Do Not Meet the Needs of Most People with Hearing Disabilities.**

43.    A CI is a medical intervention and device for a limited class of people with severe to profound sensorineural hearing loss. A CI bypasses the damaged hair cells in the inner ear. It consists of an external microphone and processor that send electronic signals to an array of electrodes embedded in a filament that is threaded into the cochlea. Those electrodes substitute for the damaged hair cells by sending electronic impulses directly to the auditory nerve, creating a sensation of sound.

44.    A CI is only available to people with severe to profound hearing loss who cannot be adequately treated with hearing aids.

45.    CIs are implanted through an invasive surgical procedure. Once they are implanted, the insured cannot go back to using hearing aids or hear without the use of CIs. The devices do not restore hearing, and once implanted, the insured may need three to six months to adapt to hearing through the implant.

46.    CIs only meet the needs of approximately 5% of people with moderate to severe hearing loss.

47.    Osseointegrated devices or BAHAs are a treatment for conductive and mixed hearing loss, as well as unilateral SNHL. https://www.hopkinsmedicine.org/ health/treatment-tests-and-therapies/baha--the-implantable-hearing-device    (last visited 11/27/24).

48.    Osseointegrated devices meet the needs of only a tiny portion of hearing disabled enrollees. Current estimates are that 75,000 Americans have received BAHAs. There is no breakdown of BAHA recipients by age. Based on the Census Bureau estimates that over 18 million Americans of all ages self-report serious hearing loss, fewer than 1% treat that condition using BAHAs.

49.    Of the estimated 18 million Americans of all ages who self-report serious hearing loss, only 171,000—less than 1%—are currently being treated by either CIs or

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

BAHA hearing aids. By comparison, according to the Census Bureau, some 8.3 million Americans of all ages use hearing aids. Based on those numbers, CIs and BAHA hearing aids together account for just over 2% of treatments for hearing loss. https://www.census.gov/content/dam/Census/library/publications/2018/demo/p70-152.pdf (last visited 11/27/24) (explanatory text at p. 7 and charts on pp. 21 (adults) and 31 (children)).

50.    Since October 17, 2022, adults may obtain OTC hearing aids without a prescription by a licensed hearing care professional. However, one recent report indicates that very few adults with hearing loss presently use OTC hearing aids. *See ASHA OTC Hearing Aid Survey*, September 12, 2023 found at: https://www.asha.org/news/2023/over-the-counter-hearing-aids-otcs-1-year-later/ (last visited 11/26/2024) (in August 2023, only 2% of survey respondents, all people over 40 with self-reported hearing difficulties had purchased an OTC hearing aid). The U.S. Food and Drug Association ("FDA") recently concluded that it is too soon to determine the impact of OTC hearing aids on consumer access to hearing aids. *See* GAO Over-the-Counter Hearing Aids:  Information on the New Medical Device Category, GAO-24-106854, May 7, 2024, found at:   https://www.gao.gov/products/gao-24-106854 (last visited 11/26/24). And, while some very small percentage of hearing disabled enrollees may have their needs for hearing devices met with OTC hearing aids, since OTC hearing aids are purchased without a prescription, they are not eligible for health insurance coverage, even if the Hearing Aid Exclusion were removed.

51.    In sum, CIs, BAHAs and OTC hearing aids do ***not*** meet the needs of most people with disabling hearing loss.

52.    Delessert, like all class members, requires prescription hearing aids to treat his hearing loss.  Like all class members, a licensed hearing care professional has

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

determined that his hearing needs are best met with hearing aids and cannot be appropriately addressed by CIs, BAHAs or OTC hearing aids

**B.        History of Disability-Based Exclusions in Health Coverage.**

53.        Based on information and belief, the Hearing Aid Exclusion is based on historic stigma and prejudice against people with hearing disabilities.

54.        Kaiser, like other health plans, historically excluded coverage based on disability. During the twentieth century, health plans could freely avoid providing coverage to any category of people that were viewed as undesirable risks, including disabled individuals. *See* Blake, p. 1085. Kaiser's benefit design during this period did not provide coverage for many disability-related conditions, including hearing loss.

55.        In 1965, the Medicare and Medicaid Act was signed into law. These two programs were intended to meet the needs of the elderly and disabled, two populations that were generally excluded from coverage by private insurance. Medicare coverage was modeled on the private coverage offered by Blue Cross and Blue Shield plans at the time. *See* De Lew, Nancy, *Medicare: 35 Years of Service*, Health Care Finance Rev. 2000 Fall; 22(1):75–103.

56.        Thus, the exclusions imposed in the typical private health insurance plans were imported into Medicare. *Id.* This includes the exclusion of coverage for hearing aids.

57.        Upon implementation of the ACA, health insurers should have reviewed and reconsidered whether such historic exclusions were the result of discrimination or were justified using the same medical and scientific standards applied to all other covered services. Based upon information and belief, Kaiser did not undertake such an analysis when the ACA was first implemented, nor even through today.

58.        Kaiser includes the same or similar Hearing Aid Exclusion in various Kaiser health plans, whether insured or administered, across the country. For example, a variation of the Hearing Aid Exclusion eliminates all coverage of hearing aids and

COMPLAINT (CLASS ACTION) – 14

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

related services when an enrollee is over the age of 18. Even when the Exclusion is differently worded or starts at a different age, it has the same effect of eliminating all coverage for hearing aids and related services without any medical and scientific evidence to support the Exclusion.

**C.    Kaiser's Hearing Aid Exclusion Is Intentional Discrimination.**

59.    Kaiser's design and administration of the Hearing Aid Exclusion is a form of intentional discrimination. *See Schmitt*, 965 F.3d at 954.

60.    Given the history discussed above and on information and belief, the Hearing Aid Exclusion, in one form or another, has been part of the benefit design in many of Kaiser's health plans.

61.    Based on information and belief, Kaiser did not consider whether the Hearing Aid Exclusion in the health plans it insured and administered resulted from historic discrimination and prejudice, even when Kaiser evaluated whether its benefit design practices complied with the non-discrimination requirements in the ACA.

62.    The only purpose of the Hearing Aid Exclusion is to eliminate coverage of medically necessary hearing aids, *i.e.*, the precise coverage often needed by disabled enrollees with hearing loss. Thus, the Hearing Aid Exclusion is targeted at eliminating otherwise medically necessary coverage for its hearing disabled enrollees.

63.    By intentional design, the Hearing Aid Exclusion is uniquely and specifically targeted at hearing disabled enrollees to ensure that the hearing aids needed by most enrollees with disabling hearing loss would not be covered.

**D.    Kaiser's Hearing Aid Exclusion Is a Form of Proxy Discrimination.**

64.    In health plans with the Hearing Aid Exclusion, Kaiser provides some, albeit minimal, coverage for hearing loss (CIs, BAHAs and diagnostic evaluations). Accordingly, the Hearing Aid Exclusion is not a categorical exclusion of all coverage related to hearing loss. Rather, it is a form of proxy discrimination.

COMPLAINT (CLASS ACTION) – 15

65.     Proxy discrimination occurs when a defendant enacts a policy that treats people differently on the basis of seemingly neutral criteria that are so closely associated with a protected group that the discrimination on the basis of those criteria is essentially intentional discrimination against the protected group. Proxy discrimination exists where "the needs of hearing disabled persons differ from the needs of persons whose hearing is merely impaired such that the exclusion is likely to predominately affect disabled persons." *Schmitt*, 965 F.3d at 959, n. 8.

66.     Hearing aids are so intertwined with hearing disability that the exclusion of hearing aids is a proxy for excluding hearing disability.

67.     Hearing aids are only used to treat forms of hearing loss and impairment. No other condition relies on hearing aids for medical treatment. Accordingly, an exclusion of coverage for hearing aids is targeted directly at hearing loss.

68.     And, as described above, all people diagnosed with hearing loss and who require prescription hearing aids meet the definition of "disability" relied upon in Section 1557, such that an exclusion of all prescription hearing aids impacts only (or nearly only) people with disabling hearing loss.

69.     In other words, there is a reasonably strong correlation between hearing disability and use of prescription hearing aids. *See Schmitt v. Kaiser Found. Health Plan of Wash.*, No. C17-1611-RSL, 2022 U.S. Dist. LEXIS 138974, at *2 (W.D. Wash. Aug. 4, 2022) ("hearing loss is a viable proxy for hearing disability"); *E.S. v. BlueShield*, No. C17-1609-RAJ, 2024 U.S. Dist. LEXIS 48611, at *8 (W.D. Wash. Mar. 19, 2024) (same). In sum, the Hearing Aid Exclusion is illegal proxy discrimination because it targets hearing disabled enrollees who require prescription hearing aids. Here, hearing aids are a proxy for hearing disability.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

70.     Thus, although the Exclusion applies only to hearing aids and not hearing loss, the "fit" of the Exclusion (*i.e.*, how closely it correlates to disability) is sufficiently close to constitute proxy discrimination.

**E.      Alternatively, Kaiser's Hearing Aid Exclusion Is Disparate Impact Discrimination.**

71.     Even if the Court were to conclude that the Hearing Aid Exclusion is not intentional/proxy discrimination, it disparately impacts enrollees who are hearing disabled. Specifically, Kaiser's Hearing Aid Exclusion disparately impacts enrollees who are hearing disabled by denying them "meaningful access" to the durable medical equipment and/or prosthetic device benefit, and to the administrative appeals and external review process.

72.     At the same time, enrollees with other diagnosed health conditions have access to medically necessary durable medical equipment or prosthetics to treat their conditions and a meaningful appeals process if they are denied. In sum, the Exclusion results in the disproportionate denial of coverage of medically necessary medical devices for people with disabling hearing loss when compared to other enrollees.

73.     The fact that Kaiser provides some coverage for hearing loss (CIs, BAHAs, and diagnostic evaluations) such that some hearing disabled enrollees may have their hearing needs met, does not immunize Kaiser from liability to Delessert and the proposed class. *See Lovell v. Chandler*, 303 F.3d 1039, 1054 (9th Cir. 2002) (a defendant's "appropriate treatment of some disabled persons does not permit it to discriminate against other disabled people under any definition of 'meaningful access.'").

74.     Additionally, hearing disabled enrollees are denied meaningful access to the Kaiser's administrative appeal and external review procedures. Plaintiff Delessert's Kaiser plan describes procedures for appeals and external review of adverse

COMPLAINT (CLASS ACTION) – 17

determinations that are available to all. However, these procedures are futile for enrollees who are denied coverage due to the Hearing Aid Exclusion in their plan.

**F.     Plaintiff Delessert and Other Enrollees Have Been and Continue to be Subject to and Harmed by Kaiser's Discriminatory Hearing Aid Exclusion.**

     **1.     Plaintiff Delessert.**

75.     Delessert is one of many enrollees in Kaiser's health plans that include a Hearing Aid Exclusion.

76.     Delessert has bilateral sensorineural hearing loss that was identified in childhood. He has worn hearing aids since middle school. He is disabled due to his hearing loss under federal law.

77.     Delessert's hearing loss is described as moderate to severe, with audiometric findings of 58 dB.

78.     His most recent audiology assessment found that he cannot hear conversational speech clearly and requires the use of hearing aids. His hearing loss affects his communication, work, learning and many other daily activities.

79.     His former hearing aids were in use for eight or more years.

80.     Delessert contacted Kaiser when he was evaluating whether to change health plans during the Washington Health Plan Finder open enrollment in the fall of 2023. He was told by the Kaiser representative with whom he spoke that Kaiser would cover his hearing aids after January 1, 2024.

81.     He also needed other coverage available through Kaiser that was not available to him through the health plan offered by his employer.

82.     Based on these factors, Delessert remained enrolled in an individual Kaiser health plan for the plan year starting January 1, 2024.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

83.    On January 16, 2024, Delessert went to see a Kaiser Permanente audiologist, Emily Morgan Battisti, Au.D. Dr. Battisti recommended that Delessert obtain new prescription hearing aids.

84.    He was next evaluated and fitted for a hearing aid at the Kaiser Hear Center. By this time Delessert learned that he had been misinformed by Kaiser, and there was no coverage under his health plan for his hearing aids.

85.    Delessert paid for his hearing aids out-of-pocket.  He paid Kaiser's Hear Center $4,800 for his hearing aids.

86.    He then submitted a claim to Kaiser for reimbursement of his hearing aids. On August 19, 2024, Kaiser denied coverage of Delessert's claim for reimbursement, asserting that "The service reported is not a covered service under your contract" and directing him to "see 'General Exclusions' section of your benefits booklet."

87.    No administrative appeal is required before a claim under Section 1557 for disability discrimination may be brought. In any event, such an appeal would be futile given Kaiser's clearly articulated position that Delessert's plan does not cover hearing aids. *See Horan v. Anthem Steel Ret. Plan*, 947 F.2d 1412, 1416 (9th Cir. 1991); 45 C.F.R. § 92.301; 81 Fed. Reg. 31441.

### 2.    Other Enrollees with Hearing Disabilities Require Hearing Aids.

88.     Delessert is not unique. Based upon the Hearing Exclusion, Kaiser has a standard policy of denying coverage of medically necessary prescription hearing aids to treat disabling hearing loss.

89.    Based on information and belief and evidence in the *Schmitt* case, Kaiser administers the Hearing Exclusion by denying all pre-authorization and post-service claims for prescription hearing aids to treat hearing loss. That is exactly what occurred for Delessert.

COMPLAINT (CLASS ACTION) – 19

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

90.     In Kaiser plans in which some hearing aid coverage is provided to people under a particular age, such as 18 years, the Hearing Aid Exclusion is also triggered by pre-authorization and/or post-service claims that are for someone with hearing loss over that particular age limit.

91.     As a direct result, Delessert and some class members have been forced to pay out-of-pocket for prescription hearing aids. Other members of the class have been forced to forgo needed hearing aids.

92.     As a result of Kaiser's deliberate discriminatory actions, Kaiser hearing disabled enrollees who require prescription hearing aids like Delessert, do not receive coverage for medically necessary treatment to treat their condition.

## V.  CLASSWIDE ALLEGATIONS

93.     *Class Definition.* The class consists of all individuals who:

(1)     have been, are, or will be enrolled under a health plan (whether insured or "self-funded") that exclude hearing aids and related services (whether the exclusion is for all ages or occurs after a particular age, such as 18 years of age) and that was, is or will be administered or insured by (a) Kaiser; (b) any affiliate of Kaiser; (c) predecessors or successors in interest of any of the foregoing; and (d) all subsidiaries or parent entities of any of the foregoing, at any time on or after December 18, 2020 ("Class Period");

(2)     have required, require or will require prescription hearing aids and related services while enrolled with Kaiser during the Class Period;

(3)     are not settlement class members in *Schmitt v. Kaiser Found. Health Plan of Wash.*, No. 2:17-cv-1611-RSL (W.D. Wash.); and

(4)     are not enrolled with Kaiser through a Medicare Advantage health plan.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

94.    *Size of Class*. The class is so numerous that joinder of all members is impracticable.

95.    *Class Representative Delessert.* Plaintiff Delessert has been and is presently, an enrollee in a Kaiser health plan that contains a categorical exclusion of all coverage for hearing aids and related services. Delessert has disabling hearing loss that requires treatment with prescription hearing aids. His hearing loss cannot be addressed with OTC hearing aids, CIs or BAHAs. He is not a member of the *Schmitt* Settlement Class. He is a "qualified individual with a disability" under the Affordable Care Act. Kaiser denied Delessert's claim for coverage of his prescription hearing aids, requiring him to pay out-of-pocket for them. Plaintiff's claims are typical of the claims of the other members of the class. Plaintiff Delessert will fairly and adequately represent the interests of the class.

96.    *Common Questions of Law and Fact*. This action requires a determination of whether Kaiser's Hearing Aid Exclusion violates the requirements of the Affordable Care Act's § 1557 and discriminates against Plaintiff and the proposed class on the basis of disability. Adjudication of this issue will in turn determine whether Kaiser is liable under the Affordable Care Act for declaratory judgment, prospective and retrospective injunctive relief, including reprocessing claims, class wide damages and other relief.

97.    *Separate Suits Would Create a Risk of Varying Conduct Requirements*. The prosecution of separate actions by proposed class members against Kaiser would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(1).

98.    *Kaiser Has Acted on Grounds Generally Applicable to the Class.* Kaiser, by imposing a uniform exclusion on all coverage for prescription hearing aids and related services, has acted on grounds generally applicable to the class, rendering

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

declaratory relief appropriate respecting the whole class. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(2).

99.    ***Questions of Law and Fact Common to the Class Predominate Over Individual Issues.*** The claims of the individual class members are more efficiently adjudicated on a classwide basis. Any interest that individual members of the class may have in individually controlling the prosecution of separate actions is outweighed by the efficiency of the class action mechanism. Issues as to Kaiser's conduct in applying standard policies and practices towards all members of the class predominate over questions, if any, unique to members of the class. Certification is therefore additionally proper under Federal Rule of Civil Procedure 23(b)(3).

100.    ***No Other Litigation.***  Upon information and belief, there has been no class action suit filed against this defendant for the relief requested in this action. Plaintiff's counsel filed a similar lawsuit in *Schmitt v. Kaiser Found. Health Plan of Wash.,* No. 2:17-cv-1611-RSL (W.D. Wash.), that resulted in a settlement agreement with a settlement class of certain Washington Kaiser insureds. The class definition here excludes all *Schmitt* settlement class members. Plaintiff Delessert is not a member of the *Schmitt* settlement class.

101.    ***Venue.*** This action can be most efficiently prosecuted as a class action in the Western District of Washington, where Kaiser conducts business, and where Delessert resides and received his denial of coverage for prescription hearing aids.

102.    ***Class Counsel***. Plaintiff has retained experienced and competent class counsel. Plaintiff is represented by Sirianni Youtz Spoonemore Hamburger PLLC and Nichols Kaster, PLLP.  Sirianni Youtz Spoonemore Hamburger PLLC is a Seattle-based law firm with significant experience representing individuals and classes who have been denied pension, health, or disability benefits under plans governed by federal and state law, including Section 1557 and ERISA. Nichols Kaster, PLLP is a 35-attorney firm that,

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

over the course of its nearly 50-year history, has developed a sterling reputation in the legal community for representing consumers and employees in class and collective actions, including those under ERISA, Section 1557, and in insurance-related matters.

## VI.  CLAIM FOR RELIEF

### Disability Discrimination
### Under Section 1557 of the Affordable Care Act, 42 U.S.C. § 181116

103.    Plaintiff Delessert and the proposed class are "disabled" under the ACA.

104.    Federal disability anti-discrimination law requires that Plaintiff's allegations regarding disability be construed "broadly in favor of expansive coverage." 28 C.F.R. § 36.105(d)(1)(i); 29 C.F.R. § 1630.2(j)(1)(i). The application of anti-discrimination law under the ACA must also be considered in light of the ACA's purpose.

105.    For example, the ACA is designed to ensure that health benefits, like durable medical equipment, are not "subject to denial … on the basis of the individuals' … present or predicted disability." 42 U.S.C. § 18022(4); *see also* 45 C.F.R. § 156.125 (extending anti-discrimination within health plans providing essential health benefits to discrimination based on disability and "other health conditions").

106.    Because the ACA's purpose is to ensure broad access to health coverage when medically appropriate, regardless of disability or health condition, the ACA's Section 1557 allows for claims of disability discrimination, such as the challenge here to elimination of coverage for hearing aids, even when similar claims might not be viable under the Rehabilitation Act or the Americans with Disabilities Act. *See Schmitt*, 965 F.3d at 955.

107.    Here, Plaintiff states this cause of action under the ACA on behalf of himself and members of the proposed class for purposes of seeking declaratory and injunctive relief, and he challenges the disability-based discrimination arising out of the

COMPLAINT (CLASS ACTION) – 23

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

design and administration of the Hearing Aid Exclusion, both facially and as applied to Plaintiff and the proposed class.

108.    Section 1557 of the ACA, 42 U.S.C. § 18116, provides that "an individual shall not, on the ground prohibited under … section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

109.    Kaiser is a "health program or activity" part of which receives federal financial assistance. 42 U.S.C. § 18116; 45 C.F.R. § 92.4. Thus, Kaiser is a "covered entity" under the Affordable Care Act, § 1557.

110.    Kaiser and/or its subsidiaries or affiliates provided assurances to the U.S. Department of Health and Human Services that it complies with the requirements of § 1557. *See* 45 C.F.R. § 92.5.

111.    Through its subsidiary/affiliate, it also provided similar statements to its enrollees, confirming that it complies with the requirements of § 1557.

112.    The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, as amended in 2008, defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual," 42 U.S.C. § 12102(1)(A).

113.    The applicable regulations state that the term "substantially limits" is to be construed "broadly," is not meant to be a "demanding standard," 29 C.F.R. § 1630.2(j)(1)(i).

114.    "Major life activities" include, among other things, "hearing, communicating and working." 42 U.S.C. § 12102(2)(A).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

115.    The presence of a disability is to be assessed "without regard to the ameliorative effects of mitigating measures such as … hearing aids or cochlear implants." 42 U.S.C. § 12102(4)(E)(i)(I).

116.    Plaintiff and the class, as defined, are "qualified persons with a disability" under both Section 504 and Section 1557 and are protected from discrimination under these provisions.

117.    Kaiser has discriminated against Plaintiff and the members of the proposed class on the basis of disability in violation of Section 1557 and have thereby denied Plaintiff and members of the proposed class the full and equal participation in, benefits of, and right to be free from discrimination in a covered health program or activity. They are entitled to equitable declaratory and injunctive relief in the form of prospective injunction and reprocessing of all claims denied under the discriminatory Hearing Aid Exclusion.

118.    Without reprocessing, declaratory, and prospective injunctive relief from Kaiser's ongoing, discriminatory actions, Plaintiff and proposed class members have suffered and will continue to suffer, irreparable harm.

## VII.  DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1.    Certify this case as a class action; designate the named Plaintiff as class representative; and designate SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC, Eleanor Hamburger, Daniel S. Gross and Ari Robbins Greene (of counsel), and NICHOLS KASTER, PLLP, Anna P. Prakash, as class counsel;

2.    Enter judgment on behalf of Plaintiff Delessert and the Class due to Kaiser's discrimination on the basis of disability under Section 1557, 42 U.S.C. § 18116;

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

3.      Declare that Kaiser violated the rights of Plaintiff Delessert and members of the proposed class under Section 1557 of the ACA when it designed, issued, delivered and/or administered the Hearing Aid Exclusion in their health plans;

4.      Enjoin Kaiser from applying the same or similar Hearing Aid Exclusions now and in the future;

5.      Require Kaiser, its agents, employees, successors, and all others acting in concert with them to reprocess and, when medically necessary and meeting the other terms and conditions under the relevant plans, provide coverage (payment) for all claims for coverage of hearing aids denied under the Hearing Aid Exclusion during the class period;

6.      Award reasonable attorney fees, costs and expenses; and

7.      Award such other relief as is just and proper.

DATED:  December 18, 2024.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

*/s/ Eleanor Hamburger*
Eleanor Hamburger (WSBA #26478)
ehamburger@sylaw.com

*/s/ Richard E. Spoonemore*
Richard E. Spoonemore (WSBA #21833)
rspoonemore@sylaw.com

*/s/ Daniel S. Gross*
Daniel S. Gross (WSBA #23992)
dgross@sylaw.com

*/s/ Ari Robbins Greene*
Ari Robbins Greene (WSBA #54201)
Of Counsel
arobbinsgreene@sylaw.com

3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

NICHOLS KASTER, PLLP

*/s/ Anna P. Prakash*

Anna P. Prakash (MN Bar No. 0351362)*
aprakash@nka.com

80 S. Eighth Street, Suite 4700
Minneapolis, MN 55402
Tel. (877) 344-4628

*Application for admission pro hac vice forthcoming*

**Attorneys for Plaintiff**

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246