1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  JASON M. DELESSERT, on his own
    behalf, and on behalf of all similarly
11  situated individuals,

12                          Plaintiff,

13           v.

14  KAISER FOUNDATION HEALTH
    PLAN, INC.,

15
                            Defendant.
16

CASE NO. 2:24-cv-02087-JNW

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS

17

18                    **INTRODUCTION**

19      This matter comes before the Court on Defendant Kaiser Foundation Health Plan, Inc.'s

20  Motion to Dismiss (Dkt. No. 10). Having reviewed the Motion, Plaintiff Jason Delessert's

21  Response (Dkt. No. 13), the Reply (Dkt. No. 15), the Parties' respective presentations at oral

22  argument, (see Dkt. No. 28), the relevant record, and all other supporting materials, the Motion is

23  DENIED.

24

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 1

# BACKGROUND

**A.    ACA's Anti-Discrimination Background**

Section 1557 of the Affordable Care Act ("ACA"), contains a non-discrimination

provision which states:

> [A]n individual shall not, on the ground prohibited under title VI of the Civil
> Rights Act of 1964, title IX of the Education Amendments of 1972, the Age
> Discrimination Act of 1975, or section 794 of Title 29 [i.e., Section 504 the
> Rehabilitation Act], be excluded from participation in, be denied the benefits of,
> or be subjected to discrimination under, any health program or activity, any part
> of which is receiving Federal financial assistance, including credits, subsidies, or
> contracts of insurance . . . .

42 U.S.C. § 18116(a). "Essentially, Section 1557 incorporates long-standing anti-discrimination

laws . . . and applies them to healthcare." C.P. by & through Pritchard v. Blue Cross Blue Shield

of Illinois, 536 F. Supp. 3d 791, 794 (W.D. Wash. 2021). Relevant here, the ACA incorporates

the prohibitions found under Section 504 of the Rehabilitation Act, which provides:

> No otherwise qualified individual with a disability in the United States . . . shall,
> solely by reason of her or his disability, be excluded from the participation in, be
> denied the benefits of, or be subjected to discrimination under any program or
> activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

**B.    Plaintiff Denied Coverage for Prescription Hearing Aids**

Plaintiff Jason Delessert is an enrollee in a health plan administrated by Kaiser

Foundation Health Plan of Washington Inc. ("KFHPWA"), a subsidiary of Defendant Kaiser

Foundation Health Plan Inc ("KFHP"). (See Complaint (Dkt. No. 1) ¶¶ 1, 32, 82.) He suffers

from bilateral sensorineural hearing loss, a condition where "the inner-ear and/or the nerves that

carry sound information from the inner ear to the brain are damaged." (Id. ¶¶ 37, 39.) Due to his

disability, he "cannot hear conversational speech clearly," affecting his "communication, work,

1  learning and many other daily activities." (Id. ¶¶ 78.) To treat his hearing disability, Plaintiff has

2  worn prescription hearing aids since middle school. (Id. ¶¶ 76, 79.)

3      Plaintiff enrolled in his individual KFHPWA health plan starting January 1, 2024, after

4  being informed that the plan would cover his hearing aids. (Compl. ¶¶ 80, 82.) Shortly after

5  enrolling, Plaintiff saw a KFHPWA audiologist, who recommended that he obtain new

6  prescription hearing aids. (Id. ¶ 83.) By the time he was evaluated and fitted for his hearing aids

7  at a KFHPWA facility, Plaintiff learned that "there was no coverage under his health plan for his

8  hearing aids." (Id. ¶ 84.) He paid $4,800 out of pocket and then submitted an insurance claim to

9  his plan administrator for reimbursement, which was denied on the basis that "[t]he service

10 reported [wa]s not a covered service under [Plaintiff's insurance] contract." (Id. ¶¶ 85–86.)

11     Plaintiff's plan only covered hearing exams, cochlear implants, and Bone Anchored

12 Hearing Systems ("BAHS"), but not "hearing aid examinations" nor the type of prescription

13 hearing aids which Plaintiff had been prescribed:

14

| Hearing Examinations and Hearing Aids | |
| --- | --- |
| Hearing exams for hearing loss and evaluation are covered only when provided at KFHPWA-approved facilities. | **Hospital – Inpatient:** After Deductible, Member pays 30% Plan Coinsurance |
| Cochlear implants or Bone Anchored Hearing System (BAHS) when in accordance with KFHPWA clinical criteria. | **Hospital – Outpatient:** After Deductible, Member pays 30% Plan Coinsurance |
| Covered services for initial cochlear implants and BAHS include diagnostic testing, pre-implant testing, implant surgery, post-implant follow-up, speech therapy, programming and associated supplies (such as transmitter cable, and batteries). | **Outpatient Services:** Office visits: After Deductible, Member pays $20 Copayment for primary care provider office visits or $45 Copayment for specialty care provider office visits |
| | Deductible does not apply to the first 5 office visit claims received and processed per calendar year. |
| Replacement devices and associated supplies – see Devices, Equipment and Supplies section. | All other services, including surgical services: After Deductible, Member pays 30% Plan Coinsurance |
| Hearing aids including hearing aid examinations. | Not covered; Member pays 100% of all charges |
| **Exclusions:** Hearing care, routine hearing examinations, programs or treatments for hearing loss including, but not limited to, externally worn hearing or surgically implanted hearing aids, and the surgery and services necessary to implant them except as described above, and hearing screening tests required under Preventive Services | |

1  (Declaration of J. Derek Little (Dkt. No. 11), Ex. 1 at 28.)

2        Plaintiff brings a single claim on behalf of himself and a putative class alleging that

3  Defendant's exclusion of hearing aid exams and prescription hearing aids violates Section 1557

4  of the ACA, because it discriminates against plan members on the basis of disability. (See

5  generally, Compl.) Defendant moves to dismiss. (See Mot. (Dkt. No. 10).)

6                                    **ANALYSIS**

7        Defendant seeks to dismiss Plaintiff's complaint, on the grounds that (a) under Rule

8  12(b)(1), the Court lacks Article III standing because Plaintiff's injury is not traceable to

9  Defendant; and (b) under Rule 12(b)(6), Plaintiff fails to state a claim upon which relief may be

10  granted. The Court addresses both grounds for dismissal and their respective standards, in turn.

11  **A.    Rule 12(b)(1)**

12        Defendant claims that Plaintiff's alleged injuries are not fairly traceable to KFHP,

13  because his plan was issued by its subsidiary, KFHPWA. (See Mot. at 13–14; Reply at 8–9.) The

14  Court disagrees.

15        "The party invoking federal jurisdiction bears the burden of establishing the[] elements"

16  of Article III standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). Article III standing

17  requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

18  challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

19  decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). The second inquiry, the only

20  disputed issue here, requires a "causal connection between the injury and the conduct

21  complained of," that is, "the injury has to be fairly traceable to the challenged action of the

22  defendant, and not the result of the independent action of some third party not before the court."

23  Lujan, 504 U.S. at 560–61 (cleaned up) (quoting Simon v. Eastern Ky. Welfare Rights

24

1   Organization, 426 U.S. 26, 41–42, 96 (1976)). Because Section 1557 of the ACA is a civil rights

2   statute, Courts are instructed "to take a broad view of constitutional standing in civil rights cases,

3   especially where," as here, "private enforcement suits 'are the primary method of obtaining

4   compliance with the Act.'" Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1039–40 (9th Cir. 2008)

5   (quoting Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 209 (1972)).

6        Under this "broad view," the Court finds the complaint contains adequate allegations that

7   the denial of coverage for Plaintiff's hearing aids and hearing aid examinations was fairly

8   traceable to KFHP. While there is no direct allegation that KFHP designed the KFHPWA plan,

9   this allegation is nevertheless made in the aggregate. Plaintiff alleges that KFHP "excludes

10  coverage for prescription hearing aids in many of its health plans designed and administered by it

11  or by its affiliates and subsidiaries," including his "[KFHP] health plan," which was "issued by a

12  [KFHP] subsidiary/affiliate, [KFHPWA]." (Compl. ¶¶ 9–10.) While KFHPWA "issued and

13  delivered [Plaintiff's] coverage," Plaintiff alleges that KFHP "designs and administers health

14  plans . . . that exclude all coverage for prescription hearing aids," including the exclusion at issue

15  in Plaintiff and the proposed class members' plans. (Id. ¶¶ 11, 13, Demand for Relief ¶ 3.) When

16  assessed in its entirety, the complaint adequately alleges that KFHP's discriminatory design and

17  administration of insurance plans, including those sold through a subsidiary, caused Plaintiff's

18  injury.

19       Defendant relies on a pair of cases to argue that, in the insurance context, "fundamental

20  principles of Article III standing bar a plaintiff from asserting claims against a company which

21  did not issue the policy or adjudicate the claim in question." (Mot. at 13 (citing Lee v. Am. Nat'l

22  Ins. Co., superseded by statute on other grounds 260 F.3d 997, 999 (9th Cir. 2001) and Cameron

23  v. Country Mut. Ins. Co., No. 1:24-CV-03075-MKD, 2024 WL 4557671 (E.D. Wash. Oct. 23,

24

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 5

1   2024)).) In <u>Lee</u>, the Ninth Circuit held that a plaintiff who purchased life insurance policies from

2   the parent company lacked standing to represent a putative class of plaintiffs who had bought

3   similar policies from a subsidiary. <u>Lee</u>, 260 F.3d at 1001–02 (9th Cir. 2001). The panel explained

4   that "because [plaintiff] had not purchased a[] policy [from the subsidiary], he could not

5   demonstrate that he had suffered an actual injury and therefore could not establish standing to

6   bring suit in federal court." <u>Id.</u> at 999. And in <u>Cameron</u>, the court found that plaintiffs had no

7   Article III standing to bring suit against the subsidiaries of an insurance company when the

8   policies in dispute were only issued by the parent company. <u>Cameron v. Country Mut. Ins. Co.</u>,

9   No. 1:24-CV-03075-MKD, 2024 WL 4557671, at *7 (E.D. Wash. Oct. 23, 2024). But both <u>Lee</u>

10  and <u>Cameron</u> are distinguishable as neither involved civil rights claims, and so did not require

11  those courts to employ the same "broad view" of constitutional standing as needed here. <u>Doran</u>,

12  524 F.3d at 1043.

13      The Court concludes that Plaintiff has established that the alleged harms suffered by

14  himself and the class are fairly traceable to KFHP's alleged design and administration of plans,

15  including those administered by KFHPWA, which all deny coverage related to prescription

16  hearing aids. Accordingly, the Court is satisfied that Plaintiff has met his burden to establish

17  Article III standing.

18  **B.    Rule 12(b)(6)**

19      In the alternative, Defendant argues that the complaint should be dismissed due to

20  Plaintiff failing to state a claim upon which relief may be granted. (Mot. at 14–29.) The Court

21  addresses the relevant legal standard and individual arguments brought by Defendant below.

22

23

24

1    **1.    Legal Standard**

2    Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a

3    claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must

4    construe the complaint in the light most favorable to the non-moving party and accept all well

5    pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,

6    416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658,

7    661 (9th Cir. 1998). Dismissal is appropriate only where a complaint fails to allege "enough facts

8    to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

9    570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows

10    the court to draw the reasonable inference that the defendant is liable for the misconduct

11    alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must provide "more than

12    labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

13    do." Twombly, 550 U.S. at 555.

14    **2.    Statutory and Regulatory Definition Arguments**

15    Defendant first argues that Plaintiff fails to allege that KFHP "administers healthcare

16    programs or activities or that it receives federal financial assistance" as required under Section

17    1557. (Mot. at 15; Reply at 7.) The Court disagrees. The ACA extends to "any health program or

18    activity, any part of which is receiving federal financial assistance." 42 U.S.C. § 18116(a)

19    (emphasis added), including "[a]ll of the operations of any entity principally engaged in the

20    provision or administration of any health projects, enterprises, ventures, or undertakings[.]" 45

21    C.F.R. § 92.4(2). This statutory and regulatory interpretation aligns with the allegations made in

22    the Complaint, which claims that KFHP "is the parent/holding company of certain health

23    insurers that engage in health programs or activities and receive federal financial assistance," and

24

1    are therefore considered "covered entit[ies]" under the ACA. (Compl. ¶ 32.) Even if KFHP itself

2    does not directly receive federal funds, "an entity that does not directly receive federal funding

3    may nonetheless be covered where the entity has some ability to accept or reject the federal

4    funding or exercises controlling authority over a federally funded program." <u>Doe One v. CVS</u>

5    <u>Pharmacy, Inc.</u>, No. 18-CV-01031-EMC, 2022 WL 3139516, at *12 (N.D. Cal. Aug. 5, 2022).

6    Contrary to KFHP's claims, the Complaint adequately alleges that KFHP exercises some

7    controlling authority over controls the actions of KFHPWA as it "administers the Hearing

8    Exclusion by denying all pre-authorization and post-service claims for prescription hearing aids

9    . . . [i.e.] exactly what occurred for Delessert," through his KFHPWA plan. (<u>Id.</u> ¶ 89.)

10   Furthermore, it would strain belief for KFHP, a national entity, to argue that it did not exercise

11   some control over the actions of its state-specific subsidiary. As such, the Court finds that

12   Plaintiffs have plausibly pleaded that KFHP engages in a "health program or activity, any part of

13   which is receiving Federal financial assistance" under the ACA.

14         Defendant's second definitional argument is that Plaintiff's ACA claim fails because

15   federal regulations expressly preclude any requirement that recipients of financial assistance

16   provide disabled individuals with hearing aids, and therefore Plaintiffs were not denied

17   "meaningful access" as required under the ACA and Section 504 of the Rehabilitation Act. (Mot.

18   at 15–18.) The Court disagrees. Courts in the Ninth Circuit "look to the regulations promulgated

19   pursuant to the <u>statute at issue</u> to inform the meaningful access inquiry." <u>Doe v. CVS Pharmacy,</u>

20   <u>Inc.</u>, 982 F.3d 1204, 1211 (9th Cir. 2020) (emphasis added) (citing <u>Alexander v. Choate</u>, 469

21   U.S. 287, 304–06 (1985); <u>K.M. ex rel. Bright v. Tustin Unified Sch. Dist.</u>, 725 F.3d 1088, 1102

22   (9th Cir. 2013)). The statute at issue here is Section 1557, which is in turn guided by the

23   regulations found in 45 C.F.R. § 92 <u>et seq</u>. Meanwhile, Defendant argues that the Court's Section

24

1   1557 analysis should be guided by 45 C.F.R. § 84.72, which would preclude Plaintiff's claims

2   that the hearing aid exclusion was discriminatory. However, that regulation was promulgated as

3   to the Rehabilitation Act, which is not the statute at issue (despite being partially incorporated

4   into the prohibitions found in Section 1557.) It is a bridge too far to preclude Plaintiff's ACA

5   claim on the basis of regulatory guidance pertaining to a related (but distinct) statute. <u>See</u>

6   <u>Schmitt v. Kaiser Found. Health Plan of Washington</u>, 965 F.3d 945, 955 (9th Cir. 2020) (the

7   broad scope of the ACA allows for certain claims to proceed which would otherwise be

8   precluded by the Rehabilitation Act). The Court concludes that the prohibitions found in 45

9   C.F.R. § 84.72 do not preclude Plaintiff's ACA claim.

10          **3.      Intentional Discrimination/Proxy Discrimination**

11          Defendant next argues that Plaintiff does not state a plausible claim for proxy

12   discrimination because the complaint fails to allege a "close 'fit' between the need for hearing

13   aids and disabling hearing loss." (Mot. at 19.) The Court disagrees.

14          Proxy discrimination is a "form of facial discrimination" which arises from a "policy that

15   treats individuals differently on the basis of seemingly neutral criteria." <u>Davis v. Guam</u>, 932 F.3d

16   822, 837 (9th Cir. 2019) (quoting <u>Pac. Shores Props., LLC v. City of Newport Beach</u>, 730 F.3d

17   1142, 1160 n.23 (9th Cir. 2013)). If excluding criteria are "so closely associated with the

18   disfavored group," then "facial discrimination" against that group may be reasonably inferred.

19   <u>Id.</u> For example, "discriminating against individuals with gray hair is a proxy for age

20   discrimination because 'the fit between age and gray hair is sufficiently close.'" <u>Pac. Shores</u>, 730

21   F.3d at 1160 n.23 (quoting <u>McWright v. Alexander</u>, 982 F.2d 222, 228 (7th Cir. 1992). <u>See also</u>

22   <u>Rice v. Cayetano</u>, 528 U.S. 495, 496 (2000) (holding that "[a]ncestry can be a proxy for race").

23

24

1    "Proxy discrimination does not require an exact match between the proxy category and

2    the racial classification for which it is a proxy." Davis, 932 F.3d at 838. Rather, the Court

3    assesses whether the proxy's "fit" to a protected characteristic is "sufficiently close" that

4    discrimination "can be inferred without more." Id. To assess whether an insurance policy's

5    exclusions are mere proxy for prohibited disability discrimination, the Court "looks to the

6    policy's disproportionate effect on disabled insureds (overinclusion), ability to service the needs

7    of similar disabled insureds (under inclusion)." E.S. by & through R.S. v. Regence BlueShield,

8    No. C17-1609-RAJ, 2024 WL 1173805, at *3 (W.D. Wash. Mar. 19, 2024), reconsideration

9    denied, No. 2:17-CV-01609-RAJ, 2024 WL 2250249 (W.D. Wash. May 17, 2024).

10            a.      **Overinclusion/Underinclusion**

11    Defendant argues that Plaintiff has not alleged that the hearing aid exclusion is a "close

12    fit between the need for hearing aids and disabling hearing loss." (Mot. at 19.) Specifically,

13    Defendant argues that Plaintiff fails to "plausibly allege" that if hearing aids and hearing aid

14    examinations were covered by the plan "(1) how many people with non-disabling hearing loss

15    would benefit," i.e. overinclusion; and "(2) how many hearing disabled people would not benefit

16    from hearing aids," i.e. underinclusion. (Mot. at 19–20.) The Court disagrees.

17    When evaluating a proxy challenge to a nearly identical policy, the Ninth Circuit held

18    that the critical issue is whether the need for hearing aids outside of those covered by the plan,

19    "primarily affects [the hearing disabled]." Schmitt, 965 F.3d at 959. Plaintiff adequately alleges

20    as much, particularly at the pleading stage when the Court must consider his well-pled

21    allegations as true. The Complaint explains that hearing aids are "generally prescribed when a

22    patient's hearing loss is confirmed by objective studies showing hearing loss together with

23    subjective reports to a licensed hearing care professional of a significant impact from the hearing

24    loss on their daily functioning," resulting in "all or very nearly all individuals who require

1  prescription hearing aids are [considered] 'disabled' under federal law, since they have an

2  objectively diagnosed hearing loss that causes a substantial impact on their daily functioning

3  leading to the prescription of hearing aids by a licensed hearing care professional." (Compl. ¶¶

4  41–42.) Plaintiff, like other proposed class members, is prescribed hearing aids by a "licensed

5  hearing care professional," who has also "determined that his hearing needs are best met with

6  hearing aids and cannot be appropriately addressed by CIs, BAHAs or OTC hearing aids." (Id. ¶

7  52.) This, according to the Complaint, is the "the precise coverage often needed by disabled

8  enrollees with hearing loss," which allows for the inference that the exclusion is "targeted at

9  eliminating otherwise medically necessary coverage for its hearing disabled enrollees." (Id. ¶

10  62.) And while Plaintiff's plan does offer coverage for BAHA and Cochlear implants, the Court

11  must accept as true Plaintiff's allegations that those interventions do not work for a majority of

12  people who are considered hearing disabled. (Id. ¶¶ 45–47.) In a similar vein, Plaintiff has

13  adequately alleged that over-the-counter hearing aids would meet the needs of "some very small

14  percentage" of hearing disabled enrollees, and that such hearing aids are nevertheless not

15  covered by the plan. (Id. ¶ 50.) In short, the Court finds that Plaintiff has adequately alleged that

16  non-hearing disabled people would not substantively benefit from the inclusion of hearing aid

17  exams and equipment in their insurance plans, while the vast majority of hearing disabled people

18  would benefit greatly from the same.

19        Defendant's arguments regarding Plaintiff's proxy discrimination claims center on the

20  comparison of public health and medical journal publications from national and international

21  scholarly sources, including those of Dr. Frank Lin, an expert who was formerly retained by

22  counsel for the plaintiffs during the eight-year Schmitt litigation. (See, e.g., Mot. at 21–25; Reply

23  at 12–13.) In particular, the Court notes that these arguments echo those previously made by the

24

1    Defendant in <u>Schmitt</u>. (<u>See, e.g.</u>, Defendant's Daubert Motion re: Proxy Opinions of Dr. Frank

2    Lin (Dkt. No. 150), C17-1611-RSL (July 7, 2023).) Accordingly, the Court declines to address

3    these arguments at this stage, as they contain factual disputes which are better suited for

4    determination after the Parties have had the opportunity to exchange discovery, proffer expert

5    reports, and otherwise build a factual record in this specific matter.

6         On this record and at this stage, the Court concludes that Plaintiff has adequately alleged

7    that the hearing aid exclusion is a sufficiently close fit to intentional discrimination on the basis

8    of disability, and therefore Plaintiff's proxy theory may proceed.

9         **4.    Disparate Impact**

10        Defendant argues that Plaintiff's disparate impact theory of discrimination fails because

11   the plan does not divest hearing disabled enrollees from meaningful access to the facets of the

12   plan enjoyed by other enrollees. (Mot. at 25–29.) The Court disagrees. "[T]he unique impact of a

13   facially-neutral policy on people with disabilities may give rise to a disparate impact claim where

14   state "services, programs, and activities remain open and easily accessible to others." <u>Doe</u>, 982

15   F.3d at 1211 (9th Cir. 2020) (quoting <u>Crowder v. Kitagawa</u>, 81 F.3d 1480, 1484 (9th Cir. 1996)).

16   Plaintiff has alleged that, unlike non-hearing disabled individuals, he and the proposed class

17   members have no "meaningful access" to the same plan benefits—e.g., outpatient visits and

18   durable medical equipment—as made available to other enrollees who need the same to treat

19   their own respective diagnosed health conditions. (Compl. ¶¶ 15–16.) As alleged, the Court finds

20   that Plaintiff has adequately pled that the discriminatory design and administration of the plan

21   has a disparate impact on hearing-disabled enrollees.

22

23

24

1

**CONCLUSION**

2          Under the Ninth Circuit's broad view of Article III standing regarding civil rights cases,

3   the Court finds that Plaintiff has adequately alleged that the hearing aid exclusion is fairly

4   traceable to KFHP. The Court also finds that, at this stage, the Complaint contains well-pled

5   allegations that Defendant is a covered entity under the ACA and that regulations pertaining to

6   the Rehabilitation Act do not preclude Plaintiff's claim. Further, the Court concludes that

7   Plaintiff has properly alleged that the exclusion is a sufficient proxy for discrimination prohibited

8   by Section 1557 and that, in the alternative, the exclusion disparately impacts enrollees suffering

9   from disabling hearing loss. Accordingly, the Motion is DENIED.

10          The clerk is ordered to provide copies of this order to all counsel.

11          Dated August 28, 2025.

12

13          Marsha J. Pechman
            United States Senior District Judge

14

15

16

17

18

19

20

21

22

23

24